# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**782**

**CA 11-02291**

PRESENT: SCUDDER, P.J., SMITH, FAHEY, LINDLEY, AND MARTOCHE, JJ.

---

WINIFRED K. DAY, PLAINTIFF-RESPONDENT,

V                                                MEMORANDUM AND ORDER

ONE BEACON INSURANCE, DEFENDANT-APPELLANT.

---

HURWITZ & FINE, P.C., BUFFALO (DAN D. KOHANE OF COUNSEL), FOR
DEFENDANT-APPELLANT.

BRIAN P. FITZGERALD, P.C., BUFFALO (BRIAN P. FITZGERALD OF COUNSEL),
FOR PLAINTIFF-RESPONDENT.

-------------------------------------------------------------------------------------------------------------------

Appeal from an order of the Supreme Court, Erie County (Russell
P. Buscaglia, A.J.), entered July 29, 2011 in a breach of contract
action.  The order, insofar as appealed from, granted plaintiff's
motion to dismiss defendant's first through fifth affirmative defenses
and denied defendant's cross motion for summary judgment dismissing
the amended complaint.

It is hereby ORDERED that the order insofar as appealed from is
unanimously reversed on the law without costs, plaintiff's motion is
denied, defendant's cross motion is granted and the amended complaint
is dismissed.

Memorandum:  Plaintiff commenced this breach of contract action
seeking supplementary underinsured motorist (SUM) coverage under an
automobile insurance policy issued by defendant.  Plaintiff was a
passenger in a Ford Windstar van driven by her husband that collided
with a pickup truck that had failed to yield the right-of-way at an
intersection.  Upon impact, plaintiff's car seat detached from the
floor of the minivan and plaintiff became airborne as the vehicle spun
out of control.  She allegedly sustained severe and permanent injuries
as a result of the accident.  The driver of the pickup truck (motorist
tortfeasor) had liability coverage of $100,000.  The minivan in which
plaintiff was riding was insured by defendant pursuant to a policy
with plaintiff and her husband, with SUM coverage of $500,000.
Plaintiff timely placed defendant on notice of her potential SUM
claim, and commenced the underlying personal injury action against,
inter alia, the motorist tortfeasor, sounding in negligence, and
against Ford Motor Company (Ford), sounding in strict products
liability.  Following mediation, the motorist tortfeasor's insurer
offered to settle for the policy limits of $100,000, and Ford, which
was self-insured, offered to settle for $475,000.

In the meantime, plaintiff commenced the instant action, which the parties had agreed to hold in abeyance pending settlement discussions in the underlying action. Upon learning of plaintiff's potential settlement with the motorist tortfeasor and Ford, defendant wrote to plaintiff and her attorney "to remind" plaintiff that, pursuant to the release or advance and subrogation protection conditions of the SUM endorsement, settlement of plaintiff's claims against the motorist tortfeasor and Ford without defendant's consent would vitiate plaintiff's right to SUM coverage. Shortly thereafter, plaintiff formally notified defendant of the settlement offers and stated that she intended to accept the offers unless defendant advanced the full amount of the settlement offers, i.e., $575,000, within 30 days. Defendant responded that, pursuant to the release or advance condition of the SUM endorsement, it was obligated to advance only the $100,000 limit of the motorist tortfeasor's policy and that, pursuant to the release or advance and subrogation conditions of that endorsement, plaintiff could not thereafter settle her action against the motorist tortfeasor. Defendant further responded that those conditions further prohibited plaintiff from settling her action against Ford without defendant's consent, which it refused to provide. After its initial response to plaintiff, defendant repeatedly offered to advance the $100,000 limit of the motorist tortfeasor's policy, but plaintiff rejected those offers and proceeded to settle her underlying action against the motorist tortfeasor and Ford for $100,000 and $475,000, respectively, issuing general releases to both parties.

Plaintiff then pursued this action seeking, inter alia, $400,000 in SUM coverage from defendant, and she thereafter moved to dismiss defendant's affirmative defenses of failure to satisfy the release or advance and subrogation provisions of the SUM endorsement. Defendant cross-moved for summary judgment dismissing the amended complaint. We agree with defendant that Supreme Court erred in denying its cross motion.

Exclusion 1 of the SUM endorsement provides that, except as provided by Condition 10, "if [an] insured . . . without [defendant's] written consent, settles any lawsuit against any person or organization that may be legally liable for such injury," coverage is excluded. Condition 10, the standard "release or advance" condition, provides that "[i]n accidents involving the insured and one or more negligent parties, if such insured settles with any such party for the available limit of the motor vehicle bodily injury liability coverage of such party, release may be executed with such party after thirty calendar days actual written notice to [defendant], unless within this time period [defendant] agree[s] to advance such settlement amounts to the insured in return for the cooperation of the insured in [defendant's] lawsuit on behalf of the insured . . . An insured shall not otherwise settle with any negligent party, without [defendant's] written consent, such that [defendant's] rights would be impaired."

Finally, Condition 13, the standard subrogation provision of the policy, provides that, where defendant makes a payment under the SUM endorsement, it has "the right to recover the amount of this payment from any person legally responsible for the bodily injury or loss of

the person to whom, or for whose benefit, such payment was made to the extent of the payment." It further provides that "[t]he insured . . . must do whatever is necessary to transfer this right of recovery to [defendant]. Except as permitted by Condition 10, such person shall do nothing to prejudice this right."

Here, we conclude that plaintiff violated Conditions 10 and 13 by settling with the motorist tortfeasor without defendant's consent. Pursuant to Condition 10, defendant was obligated either to consent to the settlement with the motorist tortfeasor or to advance the $100,000 settlement funds offered by that tortfeasor's insurer. That release or advance condition, however, applies only to settlements "for the available limit of the motor vehicle bodily injury liability coverage of such party," and therefore does not apply to the settlement offer by Ford, which was not based upon a motor vehicle bodily injury policy. Thus, defendant satisfied its obligation to plaintiff under Condition 10 by offering to advance the $100,000 offered by the motorist tortfeasor (*see generally Matter of Central Mut. Ins. Co. [Bemiss]*, 12 NY3d 648, 654-655) and was not obligated to advance the $475,000 offered by Ford, as plaintiff had demanded.

We further conclude that plaintiff violated Conditions 10 and 13 by settling with Ford without defendant's written consent. Condition 10 provides that plaintiff "shall not otherwise settle with *any negligent party*, without [defendant's] written consent" (emphasis added). Similarly, Condition 13 gives the SUM carrier the subrogation right to recover a SUM payment from "*any person legally responsible for the bodily injury or loss*" (emphasis added). Thus, although defendant was not obligated to advance the settlement offer made by Ford, Ford was nevertheless "legally responsible" for plaintiff's injuries, and defendant therefore had subrogation rights against Ford to the extent that its SUM payments represented payment for injuries for which Ford was legally responsible.

We reject plaintiff's contention that the last sentence of Condition 10, which provides that the insured "shall not otherwise settle with any negligent party, without [defendant's] written consent," applies only to motorist tortfeasors, not to settlement with non-motorists such as Ford. The provision on its face plainly refers to settlements with "any negligent party," and does not refer merely to motorist tortfeasors. We thus reject plaintiff's "strained, unnatural and unreasonable" interpretation of that policy condition (*Progressive Northeastern Ins. Co. v State Farm Ins. Cos.*, 81 AD3d 1376, 1378, *appeal dismissed* 16 NY3d 891, *lv dismissed* 17 NY3d 849; *see Central Mut. Ins. Co.*, 12 NY3d at 658-659). Plaintiff's interpretation would require the replacement of the word "motorist" for "party" in the last sentence of Condition 10, such that the phrase would read "negligent motorist" rather than "negligent party." Had the sentence been intended to read in the manner suggested by plaintiff, it would have been easy enough to phrase it that way.

We thus conclude that, by settling with Ford and the motorist tortfeasor in violation of Conditions 10 and 13, plaintiff prejudiced defendant's subrogation rights and thereby vitiated her right to SUM

coverage (*see Weinberg v Transamerica Ins. Co.*, 62 NY2d 379, 381-382).
In view of our determination, we need not address the parties'
remaining contentions.

Entered:  June 29, 2012                          Frances E. Cafarell
                                                 Clerk of the Court